UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

UNITED STATES OF AMERICA,  Criminal No. 07-17  JRT/AJB

   Plaintiff,

v.  **REPORT AND RECOMMENDATION**

LARRY DARNEL ARMSTRONG,

   Defendant.

Tricia A. Tingle, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

Scott F. Tilsen, Esq., Assistant Federal Defender, for the defendant, Larry Darnel Armstrong.

This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on February 13, 2007, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. The Court issued an Order on Motions dated February 23, 2007, reserving defendant Larry Darnel Armstrong's motion to suppress search and seizure evidence and motion to dismiss for submission to the district court on report and recommendation.

Based upon the file and documents contained therein, along with testimony and exhibits received at hearing, the magistrate judge makes the following:

**FINDINGS**

**June 29, 2006, Search Warrant.** On June 29, 2006, Blue Earth County District Court Judge Bradley C. Walker issued a warrant to search a particularly described apartment residence in Mankato, Minnesota, along with a specifically described and licensed motor vehicle

(Hearing Exh. No. 1). The location is further identified in the supporting affidavit as the residence of Vera Gant and defendant Larry Darnel Armstrong. The search warrant identified the objects of the warrant as items indicating ownership of the vehicle; photos and videos of the vehicle interior; Eagle rims and lug nuts; receipts and documents associated with the Eagle rims; a woman's tri-fold wallet; credit cards and identifications in the name of Jenna Healy; a gold necklace; credit card receipts from Walmart, G-Style clothing, General Nutrition Center, Claires, and Cub Express Gas; photos and videos of the residence, and items indicating possession of the apartment residence. The warrant was issued on the basis of probable cause contained in the Affidavit of Mankato Police Officer Keith Mortensen, including surveillance information and information obtained from victims of alleged identity theft.

The warrant was executed on the afternoon of June 29, 2006, by members of the Mankato Police Department, assisted by officers with the Minnesota River Valley Drug Task Force, including Officer William Reinbold. Officers were searching primarily for stolen credit cards and receipts and during the course of the search Officer Reinbold and Officer Robert Sadusky took turns taking photographs of items found in the apartment. While searching the bedroom Officer Reinbold discovered a white plastic bucket containing miscellaneous items (Hearing Exh. No. 3). Upon looking in the bucket for credit cards and the like, he found a digital scale and a razor blade which he determined to be possible drug related items. In further examination of the digital scale Reinbold observed a white powder (Hearing Exh. No. 4) which field tested positive as cocaine. Officers also found a mailing addressed to defendant Armstrong at the search address (Hearing Exh. No. 5). Upon identification of the white powder officers advised the apartment occupants, Mr. Armstrong and Ms.

Gant, that they were under arrest for fifth degree drug possession.

Officer Reinbold next proceeded to search the adjacent bedroom closet where he discovered an unmarked plastic case covered by shoes and clothing (Def. Hearing Exh. No. 1). He believed the container to be a handgun case (Hearing Exh. No. 6). The case was latched on the top and padlocked on one side. The officer was able to pry open one side of case and observed a handgun and ammunition inside of it (Hearing Exh. No. 7). Officer Reinbold thereafter gave the handgun to Mankato Police Detective Terry to determine whether the firearm was stolen and whether the defendant had a felony record. Within 15-30 minutes after finding the gun case, and while they were still at the search scene, officers learned that the firearm was indeed stolen.

**July 5, 2006, Search Warrant.** On July 5, 2006, Blue Earth County District Court Judge Bradley C. Walker issued a second warrant to search the same particularly described apartment residence in Mankato, Minnesota, and further authorizing the search of the person of Vera Maria Gant (Hearing Exh. No. 2). Again, the location is identified in the supporting affidavit as the residence of Vera Gant and defendant Larry Darnel Armstrong. The search warrant identified the objects of the warrant as a Hummer remote control car; a cookware set; candles and packaging; earrings; a chain necklace; dark pants; a white shirt with lettering; a white shirt with a print; a dark woman's skirt; a blue woman's tank top; a blue jacket with an emblem; a dark waist-length jacket; dark men's shoes; photos of the residence; and photos of the residence occupants. The warrant was issued on the basis of probable cause contained in the Affidavit of Mankato Police Detective Wayne Terry, including evidence obtained and/or observed in the execution of the previous search warrant and store surveillance video information.

Based upon the foregoing Findings, the Magistrate Judge makes the following:

**CONCLUSIONS**

<u>Search Warrants</u>

**Issuance of the June 29, 2006, Search Warrant.** Evidence seized pursuant to a warrant to search a particularly described apartment residence in Mankato, Minnesota, as well as a specifically identified motor vehicle (Hearing Exh. No. 1), was not unlawfully obtained in violation of the constitutional rights of defendant Larry Darnel Armstrong. The residence search warrant was issued on June 29, 2006, and was based upon sufficient probable cause as stated in the Affidavit of Mankato Police Officer Keith Mortensen and as determined by Blue Earth County District Court Judge Bradley C. Walker. The warrant properly and sufficiently identified the location of the search and the items to be seized. The search warrant was lawfully issued and there is no requirement for suppression of evidence on grounds that the warrant was unlawfully issued.

**Warrant Execution.** Seizure of a handgun during the execution of the June 29, 2006, was not unlawful and suppression of the firearm is not required. Although firearms are not included on the list of items subject to seizure under the search warrant, the handgun was observed in plain view during the course of a lawful search, and the weapon's incriminating nature was sufficiently apparent to justify the seizure under the circumstances of the warrant execution in this case.

Defendant Armstrong acknowledges that the June 29, 2006, warrant was lawfully issued and that despite being in a locked case, the handgun was in plain view of officers. However, defendant insists that the gun was unlawfully seized under circumstances such that at the time of the seizure officers did not have actual knowledge that the weapon was stolen and did not know that the

defendant was a convicted felon. Defendant relies primarily upon the decision in Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149 (1987), establishing that seizure of evidence pursuant to the plain view doctrine requires officers to have independent probable cause to justify the seizure. Essentially, the defendant asserts that the incriminating character of the evidence is not supported by probable cause if the officers were not aware that the handgun was stolen, were not aware the defendant was a convicted felon, and the amount of drugs found at the scene was insufficient to support drug trafficking charges.[1] The government contends that the handgun seizure was lawful because the incriminating nature of the evidence was immediately apparent to officers due to the weapon's proximity to drugs.

      The plain view doctrine allows a police officer to seize evidence without a warrant when (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself. United States v. Hughes, 940 F.2d 1125, 1126-27 (8th Cir. 1991)(sustaining the seizure of a firearm in plain view proximity to drugs)(citing Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2308 (1990). In the present instance the officers were conducting a search of the premises pursuant to a valid warrant and there are no Fourth

---

[1] A criminal action was initially commenced in Minnesota state court and was referred to United States District Court from Blue Earth County District Court after a suppression hearing had been held and a ruling suppressing the handgun evidence was issued by the state court judge. Defendant also seeks suppression of handgun evidence and/or dismissal of the firearm charge through application of collateral estoppel based upon the prior state court ruling. The stated grounds for suppression in the state case was the court's determination that officers did not know the criminal background of the suspect and did not know that the gun was the fruit of a crime before it was seized. Order Re: Probable Cause dated December 18, 2006, Attachment to Defendant's Post-Hearing Memorandum in Support of Pretrial Motions.

Amendment implications with respect to law enforcement officers' presence at the residence or their access to the object in plain view. The handgun itself was not immediately visible to officers, but the plastic case in which it was stored was properly opened in the context of the lawful search for credit cards and other materials that were objects of the warrant. With regard to the incriminating character of the evidence, the court concludes that there was probable cause to believe the gun was contraband or evidence of criminal activity, and that the incriminating character of the object was immediately apparent under circumstances in which the weapon was found within a few feet from a container holding a scale, i.e. equipment used in drug distribution activity, that had cocaine on it. Defendant acknowledges the present action's factual similarity to United States v. Hughes, 940 F.2d 1125, but contends that Hughes is distinguishable because the defendant in that case was charged with possessing a firearm in relation to a drug trafficking crime, but in this case only a trace amount of drugs was found. That is not a distinction that supports suppression of the gun in this action, and Hughes is essentially on all fours with the present matter. In Hughes the cocaine was generically described as contraband and the volume of cocaine that was found was not discussed as a basis on which to evaluate the incriminating nature of the gun. Moreover, Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, can be distinguished from this case because a serial number on an item of stereo equipment has no inherent relationship to firearms, the primary objects of the search in that case, whereas various implications relating to offense levels and sentencing become manifest when a gun is discovered in the immediate vicinity of drugs. Defendant's argument would seem to place the full onus of charging and sentencing on officers who are merely collecting evidence and are not necessarily able to anticipate evidentiary discoveries or immediately appreciate their full significance. The law does not impose such a burden on

officers.  Also, unlike the situation in <u>Arizona v. Hicks</u> in which the moving of stereo equipment constituted a search that was separate and apart from the primary search for a shooter, victims and weapons, <u>Id.</u>, 107 S.Ct. 1152, the firearm in the present case was discovered in the context of the primary search for credit cards and related materials.  Finally, under circumstances in which the discovery and examination of the gun for a serial number was not constitutionally improper, the court finds no violation with regard to the actual inquiries or the minimal time required in this instance to determine that the gun was stolen and the defendant had a criminal record.  Suppression of the gun seized in the investigation in this matter is not required.

**July 5, 2006, Search Warrant.** Evidence seized pursuant to a second warrant to search the same particularly described apartment residence in Mankato, Minnesota, as well as the person of Vera Gant (Hearing Exh. No. 2), was not unlawfully obtained in violation of the constitutional rights of defendant Larry Darnel Armstrong.  The residence search warrant was issued on July 5, 2006, and was based upon sufficient probable cause as stated in the Affidavit of Mankato Police Detective Wayne Terry and as determined by Blue Earth County District Court Judge Bradley C. Walker.  The warrant properly and sufficiently identified the location of the search and the items to be seized.  The search warrant was lawfully issued and executed and there is no requirement for suppression of evidence seized pursuant to the warrant.

**Dismissal of Indictment**

**Speedy Trial.**  Defendant Larry Armstrong's right to speedy trial has not been violated as a consequence of combined state and federal prosecutions and dismissal of the indictment on speedy trial grounds is not required.  Mr. Armstrong was arrested on various state charges, including an

unlawful possession of a firearm charge, on June 29, 2006. Bail was set but the defendant remained in state custody during the pendency of state proceedings, including an omnibus hearing in October 2006. The state court judge issued an order suppressing the seized firearm and dismissing the weapons charge on December 19, 2006, though the defendant remained in state custody on charges relating to other property offenses.

The Speedy Trial Act, 18 U.S.C. § 3161, et seq., requires that a federal indictment be filed within 30 days of an arrest and that the defendant be brought to trial within 70 days of an initial appearance on the indictment. The defendant acknowledges that the initial arrest and prosecution in this matter was conducted by Minnesota state authorities, in the context of state court proceedings, but he argues that the time limitation of the Speedy Trial Act should be applied in this instance because state officials held the defendant at the instruction of federal authorities and with the understanding that a federal prosecution was imminent. In support of his contention the defendant cites a comment by the Assistant Blue Earth County Attorney to the state court judge at the October 2, 2006, omnibus hearing, in which the prosecutor advised the court that the prosecution would likely being going to federal court and that the state case would then be dismissed.[2] Defendant generally asserts that he has been prejudiced in the delay in federal prosecution because he has had to spend several months in custody, his ability to obtain witnesses and their recollections has been impaired, and the government may have obtained statements made by him in conversations from the jail. In opposition to dismissal the government asserts that the Speedy Trial Act applies only to federal prosecutions and there has been

---

[2] Omnibus hearing transcript dated October 2, 2006, page 15. Attachment to Defendant's Post-Hearing Memorandum in Support of Pretrial Motions.

no violation of the Act. The United States further argues that the defendant has not met the heavy burden of establishing actual prejudice resulting from delay and has not shown that proceedings were intentionally delayed to gain tactical advantage or to harass the defendant.

A state arrest does not activate the time limits of the Speedy Trial Act. United States v. Carlson, 697 F.2d 231, 235 (8th Cir. 1983)((citing United States v. Iaquinta, 674 F.2d 264 (4th Cir. 1982)(Act applies only to federal prosecutions, triggered by federal arrests)). Defendant Armstrong was federally charged by complaint filed on December 29, 2006; his initial appearance in federal court took place on January 3, 2007; and he was indicted on January 17, 2007, well within the 30 days allowed under the act. In addition, 70 days have not passed since the indictment was issued. There has been no violation of defendant's rights under the Speedy Trial Act. To the extent the defendant alleges that his right to a speedy trial has been abridged as an equitable matter, the defendant not concretely shown any actual prejudice. United States v. Savage, 863 F.2d 595, 598 (8th Cir. 1988). Specifically, defendant has not identified lost witnesses or lost material evidence resulting from pre-federal arrest delay. Nor has the defendant established that the prosecution has been delayed for the purpose of gaining tactical advantage or harassment. United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044 (1977). Defendant Armstrong is not entitled to dismissal of federal charges based upon denial of his right to speedy trial in this case.

**Collateral Estoppel.** A Minnesota state court determination on suppression of evidence is not entitled to collateral estoppel effect in this federal prosecution and neither suppression of evidence nor dismissal of the indictment on double jeopardy or collateral estoppel grounds is required. The defendant initially moved to dismiss the indictment on double jeopardy grounds but subsequently

described the motion as one for dismissal based upon a due process right to application of a branch of double jeopardy, akin to collateral estoppel, relating to re-litigation of the firearm suppression issue. The government correctly notes that the Fifth Amendment protection against double jeopardy attaches when the jury is empaneled and sworn. United States v. Melius, 123 LF.3d 1134, 1137 (8th Cir. 1997). Jeopardy does not attach upon ruling on pretrial motions. Serfass v. United States, 420 U.S. 377, 389, 98 S.Ct. 1055, 1063 (1975). Moreover, the defendant offers no authority for the proposition that collateral estoppel is properly applied with respect to suppression motions in a criminal prosecution, and offers no argument as to how general principles of collateral estoppel might be applied in this matter in which the prosecuting party in the first instance, the State of Minnesota, is not the same party against which the previous ruling is to be applied, the United States. Defendant's motion to dismiss the indictment on double jeopardy/collateral estoppel grounds should be denied.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

### RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Larry Darnel Armstrong's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied**  [Docket No. 16]; and

2. Defendant Larry Darnel Armstrong's Motion Dismiss Indictment be **denied** [Docket No. 14].

Dated:     March 2, 2007

          s/ Arthur J. Boylan  
          Arthur J. Boylan  
          United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before March 16, 2007.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.