# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 07-17 (JRT/AJB) |
| Plaintiff, | |
| v. | **ORDER ON REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| LARRY DARNELL ARMSTRONG, | |
| Defendant. | |

Tricia A. Tingle, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Andrea K. George, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

On December 29, 2006, defendant Larry Darnell Armstrong was charged by complaint with possessing a firearm after having been previously convicted of a crime punishable by imprisonment for a term exceeding one year.[1]  This matter is before the Court on defendant's motion to suppress evidence and motion to dismiss indictment for violations of his right to a speedy trial.  In a Report and Recommendation dated March 2, 2007, United States Magistrate Judge Arthur J. Boylan recommended that defendant's motions be denied.  The defendant timely objected to the Report and Recommendation. The Court has conducted a *de novo* review of the objections pursuant to 28 U.S.C. §636

---

[1] A criminal action was initially commenced in Minnesota state court.  It was referred to United States District Court after a suppression hearing had been held and the state court judge issued a ruling suppressing the handgun evidence.

(b)(1)(C) and D. Minn. LR 72.2(b).  For the reasons discussed below, the Court adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND[2]

On June 29, 2006, the Blue Earth County District Court issued a warrant to search a particularly described apartment residence in Mankato, Minnesota, along with a specifically described and licensed motor vehicle.  The location is further identified in the supporting affidavit as the residence of Vera Gant and defendant Larry Darnell Armstrong.  The warrant sought evidence concerning theft involving a stolen credit card. The warrant was issued on the basis of probable cause contained in the Affidavit of Mankato Police Officer Keith Mortensen, including surveillance information and information obtained from victims of alleged identity theft.

The warrant was executed on the afternoon of June 29, 2006, by members of the Mankato Police Department, assisted by officers with the Minnesota River Valley Drug Task Force.  Officers were searching primarily for stolen credit cards and receipts, and during the course of the search Officer William Reinbold and another officer took turns taking photographs of items found in the apartment.   While searching the bedroom Officer Reinbold discovered a white plastic bucket containing miscellaneous items. Upon looking in the bucket for credit cards and receipts, he found a digital scale and a razor blade, both of which he determined to be possible drug related items.  Officer Reinbold observed a white powder on the digital scale, which field tested positive as cocaine. Officers also found a mailing addressed to defendant at the search address.

---

[2] The Background section is based on the Findings of the Magistrate Judge.

Upon identification of the white powder, officers advised the apartment occupants, defendant and Gant, that they were under arrest for fifth degree drug possession.

Officer Reinbold next proceeded to search the adjacent bedroom closet where he discovered an unmarked plastic case covered by shoes and clothing.  He believed the container to be a handgun case.  The case was latched on the top and padlocked on one side.  The officer was able to pry open one side of the case and observed a handgun and ammunition inside of it.  Officer Reinbold thereafter gave the handgun to a Mankato police detective to determine whether the firearm was stolen and whether defendant had a felony record.  Within 15-30 minutes after finding the gun case, and while they were still at the search scene, officers learned that the firearm was indeed stolen.

## ANALYSIS

I.   **MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE**

The Magistrate Judge concluded that the seizure of a handgun during the execution of the June 29, 2006 search warrant was lawful and that suppression of the gun was therefore not required.  Specifically, the Magistrate Judge concluded that the gun, although not within the scope of the items sought by the warrant, was "observed in plain view during the course of a lawful search" and that "the weapon's incriminating nature was sufficiently apparent to justify the seizure under the circumstances of the warrant exclusion in this case."  (Report and Recommendation at 4.)

The plain view doctrine allows a police officer to seize evidence without a warrant "when (1) the officer did not violate the Fourth Amendment in arriving at the place from

which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *United States v. Hughes*, 940 F.2d 1125, 1126-1127 (8th Cir. 1991) (internal quotations omitted). The prosecution bears the burden of proof that a plain-view exception to the warrant requirement is met. *Arkansas v. Sanders*, 442 U.S. 753, 759-60 (1979).

The first and third requirements of the plain view doctrine are satisfied. The officers gained entry to the residence under a properly issued warrant, and although the gun was hidden, the officers had a right to look where they discovered it. *United States v. Johnson*, 707 F.2d 317, 322 (8th Cir. 1983). A lawful search extends to all areas and containers in which the object of the search may be found. *United States v. Ross*, 456 U.S. 798, 820-21 (1982); *United States v. Johnson*, 709 F.2d 515, 516 (8th Cir. 1983) (per curiam). Here, the officers found the gun inside a gun case under shoes and clothing in a closet. The stolen credit cards and receipts could have been concealed in this place.

The second requirement of the plain view doctrine, that the incriminatory nature of the evidence be immediately apparent, is satisfied if there is probable cause to associate the property seized with criminal activity. *United States v. Wayne*, 903 F.2d 1188, 1196 (8th Cir. 1990); *see Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (holding that a seizure pursuant to the plain view doctrine still must be supported by probable cause).

The officers ultimately discovered that the firearm was stolen and that the defendant was a convicted felon. However, the officers were not aware of these facts when the gun was seized and therefore the gun could not be seized as contraband or evidence of the crimes of felon in possession of a firearm or possession of a stolen

firearm.  The question is whether there is another basis upon which the "incriminating character" of the gun could be "immediately apparent."  *Hughes*, 940 F.2d at 1127.  The prosecution argues that there was probable cause that the gun was contraband because it was found in proximity to a digital scale, razor blade, and trace amount of cocaine.

There is neither a state nor a federal offense for possession of a firearm in proximity to a small amount of cocaine.  In contrast, possession of a firearm in furtherance of a drug trafficking crime is separately prohibited.  *See* 18 U.S.C. § 924(c)(1)(A).  In his objection, defendant asserts that the incriminating character of the gun was not immediately apparent because the other evidence found at the scene did not establish probable cause that a drug trafficking offense was occurring.  Defendant emphasizes that officers found only a trace amount of cocaine and the digital scale found is smaller than scales used by drug traffickers.  Officers found no baggies, notes, unusual traffic in and out of the home, cell phones, pagers, large sums of money or any other indicia of drug trafficking.  No drug trafficking charges were ever brought against defendant.

The prosecution relies on *United States v. Hughes*, 940 F.2d 1125 (8th Cir. 1991), in arguing that the incriminating nature of the gun was immediately apparent because of its proximity to drugs.  In *Hughes*, officers were lawfully present at a residence searching for stolen property and during the search seized a gun and cocaine.  The Eighth Circuit held that the incriminatory nature of the gun and cocaine was immediately apparent because "[c]ocaine is contraband, and the officers had probable cause to associate the gun with criminal activity."  *Id.* at 1127.

Defendant distinguishes *Hughes* because in *Hughes* large quantities of drugs and a large sum of money were found. Further, the defendant in Hughes was ultimately convicted of drug trafficking charges. The Magistrate Judge rejected the distinction made by defendant. The Magistrate Judge reasoned that in *Hughes*, the Eighth Circuit did not discuss the volume of cocaine found as a basis on which to evaluate the incriminating nature of the gun. The Magistrate Judge concluded that the incriminating character of the gun was immediately apparent in this case because of its proximity to the scale coated with drug residue. The Magistrate Judge characterized the scale as "equipment used in drug distribution activity." (Report and Recommendation at 6.) However, there was no testimony at the suppression hearing that the small scale found is equipment commonly used in drug distribution activity.[3] Defendant asserts that the scale is too small to be a useful tool of a drug trafficker. Rather, the small scale would be of use to a drug user measuring out his small purchase or for a pair of drug users to fairly divide their dosages.

The Court agrees with defendant that the incriminating nature of the gun could not have been immediately apparent unless probable cause existed that a drug trafficking offense was occurring. While the cocaine seized was clearly contraband, possession of a firearm while in possession of a small amount of cocaine is not a separate crime. It is not surprising that the Eighth Circuit in *Hughes* failed to discuss in its analysis the quantity of drugs involved. It is clear on the facts of that case that the gun was contraband because

---

[3] Officer Reinbold testified that based on his experience on the Drug Task Force, he thinks of the potential for narcotics dealing when he sees a scale and a razor blade. Importantly, he did not testify that a scale of the size found in this case is an indication of drug trafficking activity.

the large quantity of drugs and large sum of money easily demonstrated probable cause that a drug trafficking offense was occurring.  The critical question here is whether the small scale in proximity to the other items found gives rise to probable cause that a drug trafficking offense was occurring.

Without expert testimony that a small scale like the one found is a tool of drug traffickers, the Court cannot conclude that the gun was properly seized.  The Court therefore remands to the Magistrate Judge to elicit testimony as to whether the small scale found would be a tool of drug traffickers, and based on that finding, whether the scale in combination with the other items found supports the conclusion that probable cause existed that a drug trafficking offense was occurring.

## II.     MOTION TO DISMISS INDICTMENT

Defendant asserts that his rights to a speedy trial and due process were violated because of the delay between his state arrest and the initiation of federal proceedings.  The defendant was charged and kept in state custody for approximately six months prior to federal charges being brought.

A state arrest does not activate the time limits of the Speedy Trial Act.  *United States v. Carlson*, 697 F.2d 231, 235 (8th Cir. 1983).  Moreover, there is no evidence that the state held defendant at the request of federal authorities.  The speedy trial clock therefore started ticking when defendant was indicted on January 17, 2007.  Because 70 non-excludable days have not passed since the indictment, there is no speedy trial violation.  There is also no merit to defendant's argument that his due process rights were violated because of pre-indictment delay.  *See United States v. Bartlett*, 794 F.2d 1285,

1289 (8th Cir. 1986).  Defendant has not established that the delay was unreasonable and "substantially prejudicial."   *Id.*   Defendant has not identified lost witnesses or lost evidence from pre-indictment delay.[4]  The Court therefore denies defendant's motion to dismiss the indictment.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **DEFERS** ruling upon in part and **ADOPTS** in part the Magistrate Judge's Report and Recommendation [Docket No. 32].  Accordingly, **IT IS HEREBY ORDERED** that:

1.     The Court **DEFERS** ruling on defendant's Motion to Suppress All Evidence Obtained As A Result Of Search And Seizure [Docket No. 16].  This matter is **REFERRED** back to the Magistrate Judge for additional findings and recommendations as set forth above.

2.      Defendant's Motion to Dismiss Indictment [Docket No. 14] is **DENIED**.


DATED:      April 20, 2007
at Minneapolis, Minnesota.

_____ s/ John R. Tunheim _____
JOHN R. TUNHEIM
United States District Judge

---

[4] The Court is unsure whether defendant objects to the Magistrate Judge's conclusion regarding defendant's collateral estoppel argument.  In any case, the Court agrees with the Magistrate Judge that collateral estoppel does not apply in this instance.